HENRY HAINES ET AL. *v.* CALEB HAINES ET AL.

[43 South., 465.]

MARRIAGE. *Slaves. Laws 1865, p. 82, ch. 4; Constitution 1869, art. 12, sec. 22. Inheritance.*

Where a negro man and woman, who had lived together in pursuance of a slave marriage until their emancipation, continued to cohabit and hold themselves out to the world as husband and wife after the adoption of Laws 1865, p. 82, ch. 4 and Constitution 1869, art. 12, sec. 22, providing that all persons who had not been married but were then living together as husband and wife should be held to be lawfully married, the husband could not "off with the old love and on with the new" at pleasure, and his children by the wife inherited his property to the exclusion of the descendants of the mistress.

FROM the chancery court of, second district, Coahoma county. HON. PERCY BELL, Chancellor.

Caleb Haines and others, appellees, were complainants in the court below; Henry Haines and others, the appellants, were defendants there. From a decree in favor of the complainants, the defendants appealed to the supreme court.

The object of the bill was to cancel an asserted title to certain property described in the bill, complainants claiming title as heirs of one Caleb Haines, deceased, their father, and alleging that their mother, Lucy Haines, was the lawful wife of said Caleb Haines, deceased. Henry Haines and others, children of the elder Caleb Haines by Eliza Haines, defendants, claimed that Eliza was the lawful wife of Caleb. Caleb, Eliza, and Lucy were all negro slaves belonging to the same master before the Civil War, and the only issue in this case was one of fact. Which of the two women, Eliza or Lucy, was the lawful wife of Caleb Haines, deceased, and which set of children inherit his property? Before the war Eliza had been given to Caleb

as his wife, and they had contracted what is called a "slave marriage," an invalid but sincere ceremony, while Lucy, who was Eliza's younger sister, had contracted a slave marriage with one Harrison, whom she afterwards left and went to live with Caleb and Eliza. From the evidence it appeared that Caleb was living and cohabiting with both women during the war; that some time after 1870 Eliza left Caleb on account of his cruel treatment of her, and went to live with other men, afterwards removing to Texas, and never returning to Caleb; that after Eliza's departure Caleb claimed Lucy as his wife, and lived with her as such until her death in 1904. The evidence is conflicting as to which of the two women with whom he was living Caleb claimed as his wife at the time of emancipation, and which he recognized as his wife at the time of the passage of the act of 1865, and the adoption of the constitution of 1869.

The constitution section is as follows:—"All persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken and held for all purposes in law as married, and their children, whether born before or after the ratification of this constitution, shall be legitimate." Const. 1869, art. 12, sec. 22. The act of 1865, Laws 1865, p. 82, sec. 3, is quite to the same effect. The chancellor found that Lucy was the lawful wife of Caleb, and her children his lawful heirs, and that the children of Eliza, who had been put aside for Lucy, were not entitled to inherit, and decreed for complainants.

*Frank Johnston, J. A. Glover,* and *D. A. Scott,* for appellants.

*J. W. Cutrer,* and *Harris & Powell,* for appellees.

Argued orally by *Frank Johnston,* and *J. A. Glover,* for appellants, and by *J. B. Harris,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

We find ourselves after most mature consideration of the evidence in this cause, unable to escape the conclusion that the chancellor has manifestly erred in his finding. It is not the number of witnesses which determines the status of the case, but the quality of the testimony; and viewed in this light, with especial reference to the testimony of Col. Russell, we think it is clear that Eliza was the wife and Lucy the mistress of Caleb Haines. The conduct of the parties, Caleb, Eliza, and Lucy, at the period of time from 1865 to 1870, is the determining feature. The act of 1865 and the constitution of 1869 fixed the law governing in that period; and, applying that law to the conduct of Caleb, it is perfectly clear that he was living with Eliza as his wife at the time the act was passed and at the time the constitutional ordinance was adopted. Holding her out through all this period as his wife, recognizing her in every way as his wife, her children as his children by her as his wife, and the reputation in the community where the three lived during that period from 1865 to 1870 being that Eliza was the wife and Lucy the mistress, clearly Eliza was the wife. So far as a slave marriage is concerned, it was clearly proven that there was a slave marriage as to each of these women. It is shown that Lucy had a slave marriage with Harrison in Alabama, by whom she had two or three children; but the crucial test is: Who was living with Caleb as his wife at the time of the passage of the act of 1865 and the adoption of the constitution of 1869? Who, during that period, was held out to the world as his wife, recognized as his wife, cohabited with as his wife? There can be but one satisfactory answer to that question on this testimony, and that answer is that Eliza was his wife. It was not for Caleb, who had taken Eliza "for better or for worse" years and years before the act of 1865 was passed, who had children by her before that time, and some up to about 1870, and who continued to recognize her as his wife until the early '70's, or,

as George Ragsdale puts it (perhaps the most intelligent negro in the case), late in 1869 or early in 1870, because Lucy was young and Eliza had grown old, to "off with the old love and on with the new" in any such fashion as the complainants would have the court hold. If Eliza had been his wife through all the years up to 1865, and was by him held out as his wife to the world, and the mother of his children in the period between 1865 and 1870, it is utterly immaterial whether thereafter she proved a virtuous or unvirtuous woman. The fact is what the court must find—the fact of whether she had been legally recognized as Caleb's wife under the act of 1865 and the constitution of 1869. That fact once established, Caleb had no power of selecting Lucy as his wife, and turning the woman who had been the mother of his children in all his early struggles adrift. The legal inquiry is simply whether Caleb was living with Eliza as his wife, held out to the world as his wife after the passage of the act of 1865 and the constitution of 1869, or not, and we think the evidence answers this question in the affirmative by a clear preponderance of the testimony. The law married them if the facts were so, and no selection Caleb from motives of passion might subsequently have made can alter the fact that Eliza was his wife.

*The decree is reversed, and the cause remanded for decree in accordance with this opinion.*