CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1910.

R. J. & H. B. DAVIS *v.* LUCINA BELLOWS.

[56 South. 174.]

TIMBER CONTRACT. *Construction of same.*

Where plaintiff contracted with defendant to purchase all merchantable timber on a certain tract of land and to pay for the stumpage at the rate of one dollar and twenty-five cents per M, payments to be made on June 15, 1903, and quarterly thereafter, for timber previously cut and to remove all the timber by January 1, 1908, and plaintiff deposited with defendant thirty-two hundred dollars to pay for the last timber to be cut. *Held,* that the contract between the parties gave plaintiff's the right to cut all the merchantable timber for a period of five years, plaintiff to pay one dollar and twenty-five cents per M feet for all timber actually cut in that time, payments to be made as provided in the contract and that the right thus granted terminated on January 1, 1908. That the thirty-two hundred dollars paid to defendant at the date of the contract did not become absolutely the money of defendant, whether the plaintiff cut the timber or not, but was left with defendant as a

(838)

mere advance payment or security for timber which plaintiff expected to cut and pay for at the rate of one dollar and twenty-five cents per M feet and which if plaintiff did not cut would be returned to plaintiff.

Appeal from the chancery court of Hinds county. Hon. G. G. Lyell, Chancellor.

Bill in chancery by R. J. & H. B. Davis against Lucina Bellows. From a decree dismissing the bill plaintiff appeals.

The facts are as follows:

The appellants and appellee entered into an agreement, which is in substance as follows:

(1) By and between R. J. Davis and H. B. Davis, hereinafter designated as parties of the first part, and Lucina G. Bellows, hereinafter designated as the party of the second part, with reference to sawmill, timber, etc., near Jackson, Miss.

(2) Stumpage.—Said parties of the first part agree to purchase of said party of the second part all merchantable timber on a certain tract of about five thousand acres, more or less, lying adjacent to Seiger's Switch on the Illinois Central Railroad, being specifically described as follows:

(3) Description of the property.

(4) Said parties of the first part agree to pay for the said stumpage at the rate of one dollar and twent-five cents per M. Settlement and payment periods being as follows: June 15, 1903, said parties of the first part shall pay cash at the rate of one dollar and twenty-five cents per M. for all timber sawed prior to said date; and every three months thereafter during the term of this agreement said parties of the first part shall pay cash for all timber sawed during said three months.

(5) Said parties of the first part agree to remove or pay for, at above specified rate of one dollar and twenty-five cents per M., all merchantable timber on above specified premises before January 1, 1908.

(6) By the term "merchantable timber" is meant all pine and cypress scaling ten inches or more at top and cutting two or more logs sixteen feet long, and all hardwood scaling sixteen inches or more at top and cutting two or more clear logs twelve feet long; but any timber of smaller size or inferior grade shall be included as "merchantable timber," if said parties of the first part elect to cut such timber.

(7) Sawmill and tools.—Said parties of the first part agree to purchase of said party of the second part a certain sawmill on above specified premises, including all log wagons, carts, trams, etc., that are used in connection with said mill, paying therefor the sum of fifteen hundred dollars, as below specified.

(8) Here follows an agreement for the lease of sawmill, etc. The term of this lease shall be from November 20, 1902, until January 1, 1908; but, as soon as all merchantable timber is removed and paid for as above specified, said parties may at their option at once terminate this lease. Buildings erected by said first party to be the property of said first party.

(10-12) This is an agreement whereby the first party agrees to convey to the second party certain land in Tennessee for a consideration of five thousand, four hundred and twenty dollars.

(13-15) These provisions apportion the purchase price as follows: Fifteen hundred dollars in payment of sawmill. Seven hundred and twenty dollars rent on buildings, etc. "Three thousand, two hundred dollars in payment of two million, five thousand and sixty thousand feet of the last of the merchantable timber cut or uncut on premises above described. That is, said three thousand, two hundred dollars cannot be used in payment of timber until all the merchantable timber as above specified is removed from the premises above described, except two million, five hundred and sixty thousand feet. When said parties of the first part consider that they are

entitled to credit as above provided for, the parties to this contract shall have the standing timber estimated either by themselves or by parties agreed upon, and this estimate shall be a basis of settlement as above agreed upon.''

Thereafter the appellants entered upon the land and began operating a sawmill, cutting and removing merchantable timber as provided for in the contract, and paid for same every three months as it was cut. Thereafter, upon the expiration of the contract, they were notified that it would terminate, and were advised by appellee that the three thousand, two hundred dollars on deposit to pay for timber was forfeited, and that all of the standing merchantable timber which appellants had not cut during the term of the contract would be claimed as forfeited. Appellants then filed a bill in chancery, setting out the contract and the facts as detailed. The prayer of the bill is, first, that appellants be allowed to remove the merchantable timber and pay for same at the rate stipulated; and, second, if mistaken in that relief, then for a return to them of the three thousand, two hundred dollars in the hands of appellee, which, according to appellants' contention, could not be retained by appellee except to be applied as a payment on merchantable timber actually cut and removed. The chancellor dismissed the bill and granted an appeal.

*Alexander & Alexander,* for appellants.

*L. Brame* and *Ratcliff & Truly,* for appellee.

The briefs of counsel on both sides have been lost from the record.

MAYES, C. J., delivered the opinion of the court.

After a most careful consideration of this record in all of its aspects, we reach the following conclusions: The contract between the parties gave appellants the

right to cut all the merchantable timber on the land for a period of five years; appellants to pay one dollar and twenty-five cents per M feet for all timber actually cut in that time, payments to be made on the dates named in the contract, and the right thus granted to terminate on January 1, 1908. By the contract appellants were only bound to pay for the timber actually cut by them during that time, after which they had no further rights in the premises. The three thousand, two hundred dollars paid to appellee at the date of the contract constituted no payment for the timber, in the sense that it became absolutely the money of appellee, whether the appellants cut the timber or not; but it was left with her as a mere advance payment, or security, for timber which appellants expected to cut and pay for at the rate of one dollar and twenty-five cents per M feet, and which, if they did not cut, certainly obligated Mrs. Bellows to return the advance payment to them. In effect the contract is simply this: Appellee gave a five-year option to appellants on all merchantable timber on the lands, for which they agreed to pay her one dollar and twenty-five cents per M feet as they cut it. The appellants placed in appellee's hands three thousand, two hundred dollars to be held by her during the continuance of the contract. If appellants cut all of the timber, as it was contemplated that they should do, but which the contract did not oblige them to do, then the three thousand, two hundred dollars was to be absorbed by applying it as a payment on the last two million five hundred and sixty thousand feet of timber at one dollar and twenty-five cents per M feet. A calculation will show that the above number of feet at the rate specified will make exactly three thousand, two hundred dollars. If the contract expired before all the timber had been cut, appellee had the right to stop the cutting and put appellants off the premises, withholding so much of the three thousand, two hundred dollars as it took to pay for any timber that was cut and un-

paid for at the time of the expiration of the contract, at the rate of one dollar and twenty-five cents per M feet. If appellants had paid all that was due at the date of the expiration of the contract, then the whole of the three thousand, two hundred dollars should be returned to them; but appellee had no right to claim a forfeiture of the three thousand, two hundred dollars, or any part thereof.

This case is reversed and remanded, with instruction to the trial court to have an accounting between appellants and appellee. If it shall appear that the appellants are due appellee any sum for timber cut by them before January 1, 1908, and not paid for, then the court shall decree that the appellee shall deduct so much from the three thousand, two hundred dollars as is necessary to pay for the timber cut by appellants and not paid for, giving a decree in favor of appellants for the balance; and if it shall appear that appellants have paid all that they owe to appellee, then appellants shall have a decree for the whole sum, and the court shall make any sum found due appellants a charge on the timber in question.

*Reversed and remanded.*
*Suggestion of error filed and overruled.*