E. H. MIDDLETON, SHERIFF, *v.* R. J. & H. B. DAVIS.

[62 South. 164.]

1. APPEAL AND ERROR. *Law of the case. Reversal and remand. Amend-
   ments. New matter pleaded.*

   The judgment of the supreme court is *res adjudicata* of the case,
   as then presented to the court, in any further hearing thereof in
   the lower court; but it will not extend to include a case which
   may be made different from that decided by new pleadings and
   new evidence.

2. SAME.

   When a judgment or decree appealed from is by the supreme
   court reversed and remanded to the trial court, such court has
   full power to allow any amendment to be made in the pleadings

which it had power to allow before judgment or decree appealed from was rendered.

3. SAME.

The remanding of a case to the trial court is for the purpose of having it tried *de novo* and such a court has the same power to allow amendments to the pleadings, when a case is remanded with directions to enter a judgment or decree in accordance with the opinion of the supreme court, that it has when a cause is remanded without any such direction.

4. APPEAL AND ERROR. *Reversal and remand. Amendments. New matter pleaded.*

Where a case is reversed and remanded by the supreme court either with or without directions, the trial court should allow an amended answer and cross-bill to be filed by appellant, which restates his defenses and contentions more clearly and sets up new defenses and issues not raised on the first trial of the case.

APPEAL from the chancery court of Hinds county.

HON. G. G. LYELL, Chancellor.

Bill in chancery by R. J. & H. B. Davis against E. S. Middleton, sheriff, as administrator of the estate of Lucina G. Bellows, deceased. From order of the court refusing to permit the filing of an amended answer and cross-bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*L. Brame* and *E. J. Marshall,* for appellant.

It would be an outrageous situation if this court could not consider the whole case regardless of previous proceedings.

We have no patience with the doctrine that a court of last resort is bound forever by the law of the case as laid down by it on a former hearing and, in case of conceded error, is without power to correctly decide the law.

Where the decision is palpably erroneous it is competent for the court to correct it on the second appeal. *Henry* v. *Ry. Co.,* 83 Kan. 104; *Fuller* v. *Cunningham,* 67

N. W. (Neb.) 879; *Bomar* v. *Parker,* 68 Tex. 435, 438; *Eccles* v. *Walker,* 106 N. W. (Neb.) 977; *Pennington* v. *Gillaspie,* 66 W. Va. 643; *School Director* v. *Asheville,* 137 N. C., 503; *Hastings* v. *Foxworthy,* 45 Neb. 476, 34 L. R. A. 321.

Whether the courts will consider on a second appeal what was decided on the first is entirely a matter of discretion. *Spear* v. *Allen,* 135 S. W. (Tex.) 231; *Kempner* v. *Huddleston,* 37 S. W. (Tex.) 1066.

The doctrine of *stare decisis* is not inflexible and frequently departed from. *Adams* v. *Yazoo, etc., R. Co.,* 77 Miss. 194, 60 L. R. A. 33; *Lombard* v. *Lombard,* 57 Miss. 177; *Beck* v. *Allen,* 58 Miss. 173; *Henry* v. *Ry. Co.,* 83 Kas. 104; *Butledge* v. *Ry. Co.,* 123 Mo. 121; *Pratt* v. *Breckenridge,* 112 Ky. 1; *Kimball* v. *Frantsville,* 57 Pac. (Utah), 1.

The best way to sum up our position on this point is to adopt and quote the language of Lamm, J., of the supreme court of Missouri, in the case decided June 7, 1911; *Mangold* v. *Bacon,* 141 S. W. (Mo.) 650:

"The premises considered, the sum of the matter is this: Whether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or where by inadvertence, principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our duty to re-examine and correct our own errors on the second appeal in the same case. We hold the present case falls within the exceptions."

The defendant Bellows is entitled to be heard on the facts bearing on the construction of the contract and the decree should be reversed with instructions to the court below to permit the filing of the amended answer and cross-bill and to hear the proofs of the parties.

At the outset we call the attention of the court to the liberal rules laid down by it as to the filing of amended pleadings under these circumstances. In *Haines* v. *Haines,* 98 Miss. 830, 54 So. 433, this court said: "When a judgment or decree appealed from is by this court reversed and remanded to the trial court, such court has full power to allow any amendment to be made to the pleadings which it has power to allow before the judgment or decree appealed from was rendered.

"The remanding of the case to the trial court is for the purpose of having it tried *de novo,* and such a court has the same power to allow amendments to the pleadings when a cause is remanded with directions to enter a judgment or decree in accordance with the opinion of this court that it has when a cause is remanded without any such direction."

Every consideration of justice would seem to require the granting of leave to file the amended answer and cross-bill tendered for filing to the court below and we submit that the denial of such leave was erroneous.

The first hearing or trial was had on the interlocutory agreements of parties and no proof other than writings was adduced by either party. The deposition of Duval was not read.

It is perfectly obvious that the efforts of counsel were then directed towards the determination of what was then considered the main question—the time of the termination of the contract.

The interlocutory agreements did not attempt to dispose of this question as to the three thousand, two hundred dollars but only some vexing questions as to quantities of timber cut and the disposition of funds arising therefrom and matters of procedure and detail.

The first and second agreements expressly provided that the claims and demands of the respective parties should not be prejudiced except as stipulated.

The third agreement provided for a hearing and interlocutory decree on the pleadings, exhibits and written

evidence and further provided: ''For the present and until such interlocutory decree, neither party will adduce or ask the court to consider any testimony as to the amount of timber felled or lumber cut or when felled or the amount that may be due from either party to the other, or any question or damages or the like, it being understood that all of these matters are to be reserved for reference to a commissioner, if necessary, or for further proper action to be taken after the decision of this court (and in case of an appeal to the supreme court) has been made as to the question of the meaning and effect of the contract of December 24, 1902, set out in the original bill.

The failure for the present to take any testimony or to ask any relief or decree as to matters herein at this stage sought to be reserved and eliminated from consideration, shall not prejudice either party or prevent full testimony and relief as to these matters, so far as they may be important and relevant, after rendition of the interlocutory decree as to the effect and meaning of the said contract.

If the cause is so set down for the purpose of adjudicating and determining the proper construction of said contract of December 24, 1902, and an interlocutory decree is entered defining and fixing the meaning of said contract, it is understood that this interlocutory decree may be appealed from by either or any of the parties as provided by the statute in reference to appeals from interlocutory decrees. If no appeal is taken therefrom, or if an appeal is taken and it is acted upon by the supreme court, and the cause is remanded for further proceedings, then the parties shall have the right to take further testimony in regard to the matters reserved in paragraph two of this agreement, that is as to the amount of timber cut, the value thereof, the question of damages and the like. In other words, testimony may then be taken as to all matters involved in the case and not in-

cluded and settled by the interlocutory decree; and thereupon a final hearing on the pleadings, exhibits, interlocutory decree and all the testimony in the case shall be had and a decree entered accordingly, giving appropriate relief to either or any of the parties."

The cause was submitted to the chancellor who decided all the issues in favor of the defendant Bellows and after the chancellor had verbally indicated his views on the case and settled the construction of the contract it was then agreed between counsel that a final instead of an interlocutory decree might be entered in vacation—the agreement being as follows:

"In this case it having heretofore been agreed that the cause should be set down on the motion docket for hearing and the entry of an interlocutory decree, the defendants being still willing that an interlocutory decree may be rendered, reserving for further and final proceedings and decree the question of granting relief in respect to any timber cut on the sixteenth section or any other matters desired by complainants to be litigated, but, inasmuch as the cause has been heard and considered on all the issues and proof desired to be presented by either party, it is agreed that the chancellor in vacation may now proceed to render a final decree on the pleadings and evidence noted, just as if the cause had been set down in the ordinary way for final hearing and decree."

It is quite clear that this arrangement was made to enable the complainants to appeal on the main question and accordingly the decree was then entered by the chancellor on the same day.

The decree so entered having been reversed and the cause remanded, why should we not be permitted to amend our pleadings at this time in view of the manner in which this cause was considered?

Please bear in mind that in the agreement for hearing and interlocutory decree each party reserved the right to bring to the attention of the court at a later

date all matters requiring proof and it was on this state of case that the chancellor decided all the issues in favor of the defendant Bellows.

With a decree in her favor on all points why should her counsel anticipate a reversal and ask leave to make proofs? Having been sustained on every point, the defendants were then willing to accept such a decree and be bound by it, but no agreement was made to be bound by a decree for anything less.

We submit that everything indicates that the parties contemplated an appeal, in fact they agreed on that point as to the bond and details, and they necessarily contemplated a trial *de novo* in the event of a reversal.

We now ask leave to amend so as to set forth our claims in this case in an orderly manner and so that we may make proof of the facts and show the real intention of the parties and the proper construction of the contract.

Under the rule laid down in the case of *Haines* v. *Haines, supra,* the chancellor, upon the remanding of the case after the first appeal, should have proceeded *de novo* and it was our right to put our pleadings in shape to avoid unnecessary confusion and so as to clearly set forth our claims.

Please note in this connection the fact that the pleadings in the case exclusive of exhibits at the time of our request for leave to amend cover about ninety-four printed pages and to say the very least are so confusing that it would be unreasonable to expect any court to give the time necessary to a careful study and analysis of the points raised.

The ends of justice and the convenience of the court required the amendment of our pleadings, and, unless this court can say as a matter of law that, conceding all the facts set forth in our amended answer and cross-bill, we are not entitled to any relief, the amendment should be allowed.

If the court will simply read the amended answer and cross-bill we tendered for filing, particularly the part referring to the item of three thousand, two hundred dollars, we are confident it will hold that we should have been allowed to leave to amend?

We submit therefore that this cause should be remanded with instructions to the court to grant us leave to amend to the end that our proofs may be heard.

*Alexander & Alexander,* for appellee.

The former decision in this case was a final adjudication on all points and the remanding for an accounting which was to be worked out according to the decision of this court. The accounting having been determined by a former decree and by the agreement of the parties, as was stated in the affidavits as shown by the record, the lower court had no discretion in rendering the final decree. As to what the agreement was and as to whether or not the affidavits of counsel in presenting the motion for leave to reopen this question, we deem it immaterial in this case at this stage. As stated by associate counsel in his excellent brief, we are only concerned with what decree was actually rendered, and as to what was actually agreed upon. What was agreed to was determined by the decree, and the affidavits are of little consequence. A judgment of a trial court according to the intimation and direction of an appellate court on a former appeal will not be disturbed. This is true when it is only necessary to determine the amount due under the decree. In such cases where it is only necessary to figure the amount due, and interest, or to allow certain changes which can be easily determined by a calculation; although the appellate court has not then decreed the exact amount due, still the questions of law and matters of fact are *res adjudicata.* The court in its former decision decreed Davis & Son entitled to the three thousand, two hundred dollars paid Mrs. Bellows, and the chancery court had

no discretion, and could only render the decree for three thousand, two hundred dollars against Mrs. Bellows, subject to whatever damages Mrs. Bellows may have sustained to be determined by an accounting. No accounting was necessary nor could one have been had, since all matters of accounting between the parties had been adjusted by agreement and made final.

"A judgment or order of the trial court according to the intimation and direction of the appellate court, on a former appeal, will not be disturbed." *U. S.* v. *N. Y. Indian,* 173 U. S. 646; 43 Law Ed. 789; *Chamberlain* v. *Browning,* 177 U. S. 605; 44 L. Ed. 906; *Ryan* v. *Newcomb,* 42 Ill. App. 338; *Christeanson* v. *Dunham,* 75 Ill. App. 267; *Isert* v. *Davis,* 37 S. W. 157; *Coal Co.* v. *Baker,* 85 Md. 688; *State* v. *St. Paul Co.,* 81 N. W. 544, 79 Minn. 57, and numerous cases cited, vol. 2, Decen. Digest, page 734.

We shall not answer the argument by counsel, page 5 of the printed brief, that "Unless the construction of the contract is entirely free from doubt the courts will hear evidence as to the surrounding facts and circumstances —to determine the intention of the parties." These cases, including *Hall* v. *Eastman,* 89 Miss. 588, announce a general principle of law which has no bearing on this case. The consideration of the contract is not now before the court, if this court is to enforce the doctrine of *res judicata.* Nor shall we answer the numerous authorities cited on pages 7 and 8 of counsel's brief, "to determine the law as to standing timber." This, too, is bearing on questions which were submitted before this court on a former appeal pertaining to the construction of the contract, and which was most ably presented both by authorities and arguments of counsel. We will not presume on the intelligence of the court to seek to have the court uphold or reverse its former decision in reference to the construction of the contract, even though we might feel that the decision was erroneous insofar as it

pertains to the time in which Davis & Son had to re-
move the timber. If this court thus disregards the doc-
trine of *res adjudicata* and again takes up the question
of the construction of the contract in reference to the
payment of the three thousand, two hundred dollars, we
will·take our chances on being allowed to introduce au-
thorities again on this point before the learned chancel-
lor, if the case is again remanded or reversed.

The fact that the case is remanded purely for an ac-
counting does not allow the unsuccessful litigant to re-
open matters which have been formerly adjudged on ap-
peal. In addition to authorities we have fully cited, we
think the case of *Nut* v. *Knut,* 84 Miss. 465, is controlling.
On a former appeal in the case of *Knut* v. *Nut,* 83 Miss.
365, it was decided that Knut was entitled to one-third
of the sum collected by the estate of Haller Nut, deceased,
from the United States for services. After the case went
back to the chancery court, Knut filed a motion to refer
the claim to a commissioner to state the amount due him.
The commissioner made a report showing a balance of
twenty-two thousand, one hundred and six dollars and
forty-two cents. There was a final decree confirming the
report and an order that the administrator pay to Knut
the sum aforesaid. The court said: "A final decree ac-
cording to this order was entered on December 7, 1903,
and the time expired on March 6, 1904, and we are pow-
erless now to change the law of the case pronounced at
that term, even if we doubted its correctness, which we
do not. So as to that, there can be, and therefore is, no
appeal pending. There was no motion for a re-hear-
ing." *LeBlanc* v. *Railroad Co.,* 73 Miss. 463; *Lane* v.
*Wheeless,* 46 Miss. 666; *Cotton* v. *McGehee,* 54 Miss.
621.

"In accordance with the mandate of this court, the
court below proceeded to do all it could do, and that was
to have an accounting taken, and order the balance to be
paid by the administrator to S. P. Knut. In doing this,

there was on the face of the record in a personal bill a manifest error by clerical misprision or inadvertence, no doubt, in that the decree was rendered for thirty-six dollars and eighty-eight cents too much.'' The decision on the second appeal in the supreme court merely ordered a deduction of this thirty-six dollars and eighty-eight cents and a decree for the balance of twenty-two thousand, one hundred and six dollars and forty-six cents.

It will be seen, therefore, that our court will not disturb a former decision in a case between the same parties when the former decree remanded the case for an accounting only. In the *Knut case* the appeal did not lie except for the palpably erroneous calculation which the court corrected. The questions of law involved and determined in the former appeal were *res adjudicata* and binding on the court. This case was appealed and affirmed. 200 U. S. 12; 50 L. Ed. 348. In this state it was held that even an amendment offered in the lower court to the effect that the former decision of the supreme court violated certain constitutional rights of proponents, could not be permitted. In page 172, vol. 1, Miss. Digest (case of *State* v. *Woodruff*) is the following: ''The judgment of the supreme court upon a former appeal in a case, cannot be avoided on return of the case to the lower court by an amendment of the pleadings, charging that the opinion and judgment of the supreme court deprive the pleader of property without due process of law, deny him the equal protection of the law and impair his contract rights.'' *George* v. *Caldwell, et al.,* 54 So. 316.

''Where a bill for an injunction is dismissed and on appeal the decree is reversed, and a final decree is entered making the injunction perpetual, and, in accordance with Code of 1906, sec. 4946, is certified to the court below for execution, the cause is at an end, and the court below has no further adjudication.'' See, also, *Bowen* v. *Bonner,* 45 Miss. 10; *White Sewing Machine Co.* v. *Chapman,* 78 Miss. 438:

"After a cause, affirmed in part, has been remanded to the trial court, a cross-bill may not then be filed which sets up a new defense."

*R. H. & J. H. Thompson,* for appellees.

This case was heretofore in this court and the decision then made became the law of the case. The opinion of this court in the case is reported in *Davis* v. *Bellows,* 56 So. 174; 99 Miss. 838, and is a part of the present record. The "law of the case" being established, the question to what extent this court is bound by it upon a subsequent appeal is one of *res adjudicata,* and not one of *stare decisis* as contended by opposing counsel. Of course, as a general proposition, it is in the power of this court to disregard or overrule its previous decisions, but it has no such power where the previous decision is between the same parties, or their privies, and involved and determined the very point sought to be re-litigated; for in such cases the previous decision determined the controvery and made the matters involved *res adjudicata.* The very foundation upon which the present appeal is predicated, as shown by the brief of appellant's counsel, is broken and destroyed as soon as the mind recognizes the distinction between *stare decisis* and *res adjudicata.*

The doctrine of *res adjudicata* restrains parties, and others privy to the immediate parties, from litigating anew such matters as have previously been drawn into controversy between them, or those representing them, and have been authoritatively decided by a competent court. Wells on *res adjudicata* and *stare decisis,* sec. 2, page 2.

Were this not true, were the doctrine of *res adjudicata* abandoned, there never would be, nor could there be, an end to litigation; the same suits could be tried, over and over again.

The doctrine of *stare decisis* recognizes the power of a court to overrule or depart from its previous decisions,

rendered in other cases and between other parties, but
even in such cases it is deemed unwise to disregard pre-
vious decisions except on the fullest conviction that the
law had been wrongfully announced, and even then the
courts should pause and consider how ·far the reversal
would affect transactions entered into and acted upon on
the faith of the erroneous decision. Wells on *res adjud-*
*icata* and *stare decisis,* sec. 596, page 545. See, also,
*Wisconsin Lumber Co.* v. *State,* 97 Miss. 571, where an
erroneous decision was overruled, but recognized as hav-
ing established a rule of property.

We are told that "a previous ruling by the appellate
court upon a point distinctly made may be only authority
in other cases, to be followed, or affirmed, or to be modi-
fied, or overruled, according to its intrinsic merits, but
in the case in which it is made, it is more than authority;
it is a final adjudication, from the consequences of which
the court cannot depart, nor the parties relieve them-
selves; and, that too, notwithstanding the prior decision
may be in abrogation of one of the plainest principles
of law, since nothing already determined therein can be
reviewed, except indeed in the manner prescribed for ob-
taining a direct rehearing on settled terms and conditions
by a rule of the court." Wells on *res adjudicata* and
*stare decisis,* sec. 613, pages 569, 570: "On this sub-
ject Mr. Van Fleet, 2 Van Fleet's Former Adjudication,
par. 664, says: 'If a cause is reversed in a higher court
the lower one is bound to proceed in accordance with the
opinion sent down. The parties are compelled to retry
the case on the new rules laid down, and to shape their
respective causes of action or defense accordingly. Hav-
ing done so, and in many cases having irretrievably
changed their positions, it would be an injustice to over-
turn these rules on a second appeal, and these again, on a
third and so on *ad infinitum.* The suit might never end.
Besides, it would be very undignified and tend to bring
the courts into merited disrespect, if the lower court

should be compelled to retrace its steps on one appeal, and then to trace them back on a second, and so on. Hence with a few exceptions it is a rule that a matter decided on appeal becomes, in effect, *res adjudicata* in that cause; or, as it is frequently expressed, it becomes the "law of the case" in all its subsequent proceedings.' " The quotation is taken from 66 S. E. 1012. The Mississippi decisions are to the same effect. *McDonald* v. *Green,* 9 Smed. & M. 138; *Martin* v. *Lofland,* 10 Smed. & M. 317; *Green* v. *McDonald,* 13 Smed. 7 M. 445; *Smith* v. *Elder,* 14 Smed. & M. 100; *Stewart* v. *Stebbins,* 30 Miss. 66; *Sherman* v. *Lovejoy,* 30 Miss. 105; *Bridgeforth* v. *Gray,* 39 Miss. 136; *Swan* v. *Smith,* 58 Miss. 875; *New York Life Ins. Co.* v. *McIntosh,* 46 So. 401.

Appellant now proposes, and proposed in the chancery court, to show by amendment of the pleadings and additional evidence: 1. That the three thousand, two hundred dollars payment, passed upon by the court on the first appeal, was absolute and not conditional or by way of security. 2. That said payment was not made in money, but in Tennessee land of less value than three thousand, two hundred dollars. 3. Damages claimed to have been suffered by Mrs. Bellows (a) by reason of appellee's failure to cut all the timber and (b) from alleged interference with defendant's use of the land, and 4. The full value of the timber cut on, evidently meaning after, the date of the termination of the contract.

While the parties, at first, by written agreement stipulated for the rendition of an interlocutory decree, they afterwards agreed in writing that the chancery court should render a final decree on the record as made and presented to it, and that court did render a final decree in favor of present appellant's intestate, reciting, in its fourth paragraph, the withdrawal of the previous agreement. The present appellant's intestate was entirely satisfied with a final decree in her favor, and her administrator stands in no position to make complaint of the

finality of the judgment rendered by this court on the appeal of her adversaries. The agreement of June 22, 1910, not only vacated the previous agreement but imposed a duty on the court to render a final decree on the record as made, in the absence of all testimony not then of record; it was a complete waiver of all defenses or claims not already brought into the litigation; all of Mrs. Bellows' eggs were placed in one basket and she took the chances of its carriage through the litigation. When she won, as she did in the chancery court, she was satisfied; when she lost, as she did in part in this court on the first appeal, she became dissatisfied and unhappy, and sought and now seeks, to relitigate and escape the consequences of her deliberate election to rest her case on the record as made by her.

Let it be observed in respect to the fourth of appellant's proposals, a demand to diminish appellee's recovery of the three thousand, two hundred dollars for which his intestate was decreed by this court to account, that the value of the timber cut on, probably meaning after, the day of the termination of the contract, January 1, 1908, was fully disposed of by the agreement between the parties and that the chancery court manifestly by consent of the parties, adjudged that "the parties have (had) by mutual agreement adjusted and settled the matters in controversy in respect to the logs, timber, ties and other personal property mentioned in the pleadings, etc." This was a decree in Mrs. Bellows' favor; and it adjudged the settlement, and on the faith thereof she was decreed entitled to the money in the bank. This agreement was before this court on the first appeal and this court very properly acted upon the idea that an adjustment had been had and it was respected, wherefore this court then remanded the cause to chancery court with specific direction for an accounting, specifying exactly what the accounting was to be. The judgment of this court directed, touching the accounting that, "If it shall ap-

pear that the appellants are due appellee any sum for timber cut by them before January 1, 1908, and not paid for, then the court shall decree that the appellee shall deduct so much from the three thousand, two hundred dollars as is necessary to pay for the timber cut by appellants for the balance, and if it shall appear that appellants have paid all they owe appellee, then appellants shall have a decree for the whole sum, etc.''

If Mrs. Bellows was dissatisfied with the judgment of this court in any particular, she should have followed authorized procedure for vacating the judgment, in whole or in part, and having failed to do so, she is just as much bound by the directions touching the accounting as by any other part or feature of the judgment. These considerations, we think, remove from controversy the present appellant's fourth cause of complaint.

REED, J., delivered the opinion of the court.

This case was before this court on a former appeal, the style of the case then being *R. J. and H. B. Davis* v. *Lucina G. Bellows,* and is reported in 99 Miss. 838, 56 South. 174. After the case was remanded, Mrs. Bellows died, and it was revived in the name of the administrator of her estate. The present appeal is from the action of the chancery court in refusing to permit the filing of an amended answer and cross-bill, which it is claimed tendered new issues in the case, in addition to those already before the court. The following from the bill of exceptions states the reason why the chancellor would not permit the filing of the amended answer and cross-bill: ''The chancellor stated and held that he was precluded by the decision and opinion of the supreme court from entering any other than a final decree for complainants, and felt that he had no discretion to permit any further hearing, or to grant any of the relief sought by the amended answer and cross-bill, or to allow the same to be filed.''

An inspection of the former opinion in this case (*Davis* v. *Bellows, supra*) shows that it consisted of a construc-

tion of the contract for the sale of timber between Mrs. Bellows and Messrs. Davis. In the original bill the complainants, appellees in this appeal, claimed that they were the owners, under the contract of sale, of all the timber on the land, and that they should have sufficient time after January 1, 1908, the date named in the contract when the time for the removal of the timber should end, in which to go upon the land and cut and remove all of it. They further prayed that, if the court should hold that the contract should not be enforced after January 1, 1908, then the sum of three thousand, two hundred dollars, which, under the terms of the contract, was to be used in payment of 2,560,000 feet of the last of the merchantable timber cut or uncut on the premises, should be returned to them, together with interest thereon. Mrs. Bellows claimed that their right to cut and remove timber ceased on January 1, 1908, and denied the right of complainants to have returned to them the sum of three thousand, two hundred dollars. The chancery court found in favor of Mrs. Bellows. This court decided that the contract terminated on January 1, 1908, and that Mrs. Bellows had the right to stop the cutting of the timber and to put Messrs. Davis off the premises then; that "the three thousand, two hundred dollars paid to appellee at the date of the contract constituted no payment for the timber, in the sense that it became absolutely the money of appellee, whether appellants cut the timber or not; but it was left with her as a mere advance payment or security, for timber which appellants expected to cut and pay for at the rate of one dollar and twenty-five cents per thousand feet, and which, if they did not cut, certainly obligated Mrs. Bellows to return the advance payment to them." The last paragraph in the opinion reads as follows: This case is reversed and remanded, with instruction to the trial court to have an accounting between appellants and appellee. If it shall appear that the appellants are due appellee any sum for timber cut

by them before January 1, 1908, and not paid for, then
the court shall decree that the appellee shall deduct so
much from the three thousand, two hundred dollars as is
necessary to pay for the timber cut by appellants and
not paid for, giving a decree in favor of appellants for
the balance; and if it shall appear that appellants have
paid all that they owe to appellee, then appellants shall
have a decree for the whole sum, and the court shall make
any sum found due appellants a charge on the timber
in question.'' The mandate of the court states that the
decree of the chancery court from which the appeal was
taken was reversed, and the cause remanded, and, quot-
ing from the mandate, says: ''That such execution and
further proceedings be had in said cause as according to
right and justice, the judgment of our supreme court,
and the law of the land ought to be had.'' This is the
usual form of mandate where a case is reversed and re-
manded.

After the case was returned to the chancery court, Mrs.
Bellows made application to the court for leave to file
an amended answer and cross-bill. The answer offered
contains a general statement of the case and the litiga-
tion between the parties, including the original agree-
ment for sale of the timber, the several agreements be-
tween counsel while the case was pending in the chan-
cery court, the opinion of this court, a further statement
of the facts connected with the item of three thousand,
two hundred dollars in dispute, denying the indebtedness
thereof, and admitting the allegations of the original bill
of complaint which were not expressly denied in the
amended answer offered, and withdrawing the allegation
in her former answers. In her cross-bill filed, together
with the answer, she claims damages by reason of the
failure of appellees to cut all the timber within the time,
and as specified by the contract. She claims that the
timber was sold at the low price of one dollar and twenty-
five cents per thousand upon the understanding that all

of the timber, that which was composed of the higher grades, like ash, cypress, and hickory, and that of the lower grades, like gum and loblolly pine, and which entire amount of timber was estimated to be fifteen million feet, was to be cut and taken from the land, and that, instead of cutting the timber as it was reached, they moved from place to place, culled the timber, cutting only the choicest trees, selecting the kind required for their immediate use, and leaving the undesirable varieties standing; that this was in violation of the contract, and greatly injured her, because, as shown by all of the pleadings in the case, including correspondence with appellees, she desired to clear the land, in order that it might be turned into a farm or plantation, and that this was the reason for her making the special contract for sale of the timber; that the land was not cleared as she desired, but that the trees so left standing and the condition in which the land was left at the time of the termination of the contract rendered it additionally expensive to properly clear the land. She also claims damages arising from the interference with her use of the land, and she claims the right to recover the full value of the timber felled prior to January 1, 1908, and remaining on the land at that date. She alleges that under the contract as construed the timber then belonged to her, that it was then worth more than one dollar and twenty-five cents per thousand feet, and not less than three dollars per thousand feet. She bases this claim, too, upon the stipulations in an agreement made during the pendency of the litigation, by which appellees were to take certain timber which they felled and pay one dollar and twenty-five cents per thousand therefor for the purpose of preserving the property, and in which agreement is this further provision: "And if the court shall hold that the defendant was, prior to the making of this agreement, the owner of said logs, then she is not to be precluded from asserting any claim she may have as to the actual value there-

of in excess of one dollar and twenty-five cents per thousand." She claims the right to set off the amount shown to be due her by appellees for breaches of the contract against the sum of three thousand, two hundred dollars, if, upon a further hearing, the court should decree the payment by her of such sum. She also claims a lien on the sawmill belonging to appellees on the premises.

The question for our decision is whether the court should have permitted appellant to file the amended answer and cross-bill. It will be noted that the court, in its opinion reversing and remanding the case upon the former appeal, instructed the trial court to have an account between the parties, and it appears from the further words in the opinion that this accounting was in a measure limited. However, it will also be noted that the mandate, which is the decree of this court, simply reversed and remanded the case for further proceedings.

After quoting at length from the opinion in the former appeal, counsel for appellee in his brief says: "This was a final adjudication of the matter in controversy, and the case was remanded only for an accounting, to be worked out on the basis of the decision. The decision became and was 'the law of the case' and the question now sought to be re-litigated became *res adjudicata,* within the authorities cited." We fully recognize the importance of the doctrine of *res adjudicata.* The judgment of this court is *res adjudicata* of the case, as then presented to the court, in any further hearing thereof in the lower court; but it will not extend to include a case which may be made different from that decided by new pleadings and new evidence. The former judgment will control the case to the extent that it is the same, presenting the same facts and same questions for decision as the case in which it was rendered.

We find that the law relating to the power of the lower court to allow amendments to the pleadings is fully and clearly presented in the case of *Haines* v. *Haines,* 98

Miss. 839, 54 South. 433. We make the following quotation from the opinion delivered by Judge Smith: "When a judgment or decree appealed from is by this court reversed and remanded to the trial court, such court has full power to allow any amendment to be made to the pleadings which it had power to allow before the judgment or decree appealed from was rendered. The remanding of a case to the trial court is for the purpose of having it tried *de novo,* and such a court has the same power to allow amendments to the pleadings, when a cause is remanded with directions to enter a judgment or decree in accordance with the opinion of this court, that it has when a cause is remanded without any such direction. If on the trial in the court below the pleadings and proof present the same case that was before this court on the appeal, the judgment or decree of the court should be in accordance with the directions given it by this court; but, should the pleadings and proof then present a different case, the judgment or decree should be made to conform thereto"—citing *Wailes* v. *Cooper,* 25 Miss. 421; *Hanserd* v. *Gray,* 46 Miss. 75; *Taylor* v. *Wright,* 54 Miss. 722; *Canning Co.* v. *Ott,* 88 Miss. 771, 41 South. 378.

The first decision in the case of *Haines* v. *Haines* is reported in 90 Miss. 100, 43 South. 465. It seems that a bill was filed by certain parties asserting title to property as heirs of Caleb Haines, and alleging that Lucy Haines, their mother, was the lawful wife of Caleb. The court in the first opinion decided that Lucy was not the legal wife of Caleb, and against her children. At the end of the opinion the court reversed the case, using the following words: "The decree is reversed, and the cause remanded for decree in accordance with this opinion." When the case was returned to the chancery court, an amended bill was filed, in which it was alleged that Caleb and Lucy were tenants in common of part of the land in controversy, each owning an undivided half interest

therein, and that Lucy's children, the complainants in the original case, were the owners of a half interest inherited by them from their mother. A plea of *res adjudicata* was filed to this amended bill. This plea was adjudged insufficient by the chancery court, and the action of that court was affirmed by this court. It was decided that the chancellor had full power to try the cause *de novo,* and to allow any proper amendments to be made to the pleadings.

In the case of *Wailes* v. *Johnson,* 25 Miss. 421, Judge Yerger, delivering the opinion of the court said: ''By the decree remanding the cause and directing a foreclosure of the mortgage in the chancery court, we did not intend to take away the power, which belongs to the chancellor, of allowing amendments in the pleadings, or to make such other orders in the case as the equity and right of the case may demand, and the rules of practice in the chancery court allow. This power the chancellor now has, as fully in this case as in any other pending in that court. The only effect of our mandate is to require him, upon the state of the pleadings and proof remaining the same as it was when decided by the high court, to render the decree directed by the mandate.''

We note that the first hearing of this case was on the pleadings, exhibits, writings, and arguments between counsel, and no testimony of witnesses was introduced. It seems to have been in the contemplation of the parties that there should first be a construction of the contract. This court's decision of the case as then presented in the record was, in effect, a construction of the contract. The case was then returned to the lower court for further proceedings. A trial *de novo* could then have been had. The chancellor had the power to so proceed. He should, for his guidance, have given proper consideration to the opinion of this court touching the construction of the contract and such other matters as were decided. At the time, if there were any rights or claims between the par-

ties which had not appeared until the opinion was rendered, or which were presented in a different aspect thereby, these he should have permitted to be litigated. In short, all rights, claims, or liabilities arising out of the contract should be fully adjudicated and settled before the cause is finally closed in the court. To this end, the court should have permitted the filing of the amended pleadings, so that unsettled controversies could have been presented for hearing in an orderly manner, and the claims of appellant which had not been adjudicated could have been clearly set forth.

It is contended that no new facts were stated in the amended pleadings, and that there were all contained in the original pleadings. It would require a painstaking inspection of the record to ascertain whether all of the facts stated in the amended answer and cross-bill are included in the original pleadings, with exhibits. These are voluminous. But we do know that they are in the new pleadings in a very different order and for a different purpose. Some of the facts may appear, incidentally, in an answer or exhibit in the original pleadings; but now they are arranged and pleaded affirmatively for relief by appellant. This court in its former opinion put a construction on the contract different from that contended by either of the parties. There is now a new phase to the case. It is therefore, a convenience to the court, and should aid it in arriving at an equitable decision, for the facts to be restated and reshaped, so that appellant's defenses and contentions might be clearly presented at the new hearing. There can be no objection that the amended pleadings set out more explicitly the various defenses. It is our belief that new defenses and contentions were presented to the court by appellant's amended answer and cross-bill, and new and distinct issues offered. We are not in any manner expressing any views as to the sufficiency of any defense which appellant makes; but, viewing the whole case, we now decide that

the chancellor should have permitted the filing of the
amended answer and cross-bill.

*Reversed and remanded.*