# CASES ARGUED and DETERMINED.

## IN THE

# SUPREME COURT OF MISSISSIPPI

## AT THE

## MARCH TERM, 1920.

---

## YOUNG ET AL *v.* ADAMS.

[In Banc. No. 21020.]

1. LOGS AND LOGGING. *Contract construed as valid sale of timber.*
   A contract duly signed by both parties, under which one party agrees to sell all suitable timber,. to be sawed into lumber, on certain described lands, the timber to be cut by the other party and to be paid for at a certain price per thousand feet, and at a certain time, and that the party will begin cutting after finishing other work, is a valid and binding contract for the sale of the timber, and is not a *nudum pactum.*

2. ESTOPPEL. *Seller, acquiescing in assignment of contract, estoppel to assert nonassignability.*
   The vendor of standing timber, who participates in, agrees to, and acquiesces in the assignment of a timber contract by vendee to a third party, is estopped to assert its nonassignability.

3. FRAUDS, STATUTE OF. *Contract to sell timber, not signed by assignee, held enforceable by him against seller.*
   A written contract for the sale of timber is enforceable by the assignee against the vendor, who signed it and who agreed to its assignment, though not signed by the assignee, where such assignee afterwards offers, in writing, in his bill exhibited in the chancery court, to perform the contract.

APPEAL from the chancery court of Alcorn county. HON. A. J. McINTYRE, Chancellor.

Suit by W. T. Adams against H. F. Young and others. General demurrer to bill overruled, and defendants appeal.

122 Miss.]                    (1)

*W. D. Conn,* for appellant.

This suit is predicated upon an alleged timber contract, entered into between J. B. and J. R. Berryman and John W. McIntyre. This instrument is an exhibit to the original bill, and is shown on pages 7 and 8 of the record. For this suit to be maintainable, this instrument must, in the first place, be a contract; in the second place, it must be an assignable contract; and in the third place, when assigned, if assignable, its terms must be mutually binding on McIntyre, one of the original parties, and on Adams, the assignee of the other of the original parties.

As to the first proposition, appellants contend that the alleged contract is not a contract, but a mere *nudum pactum.* The original bill assumes the validity of the contract, and is drawn upon this theory. Appellants challenge this theory, and ask the court to construe this alleged contract.

The only law of contracts invoked by appellant is that requiring mutuality of obligation. In this alleged contract, "First party agrees to sell to second party," certain timber, but it does not state that second party agreed to buy timber. At the time of the execution of this alleged contract it was wholly executory. No consideration passed from second party to first party at the time the agreement was signed, this counsel has not been able to discover it. Certainly he did not bind himself to do anything in the future. He neither obligates himself to buy the timber nor to cut the timber, nor to pay for it unless he cuts it. He does not even agree to begin cutting the timber except conditionally. This was a naked agreement on the part of McIntyre to sell without any consideration to support it, and is as fine an illustration of a "*"nudum pactum"* as one could hope to find.

We wish to cite the court to the case of *Campbell* v. *Lambert,* reported in 51 American Reports, p. 1, and

to the case of *Baltimore & Ohio Railroad Co.* v. *Potomac Coal Co.*, reported in 34 American Reports, p. 316. These cases are not cited as authority for the proposition that contracts must have mutuality of obligation, but as furnishing illuminating examples of the application of this law to instruments claimed to be contracts, but which were construed otherwise because they lacked this essential quality.

Our whole argument, which, in any event, will be short, would be stated in two words: *"Nudum pactum."* If this instrument is a *nudum pactum*, this honorable court will see it at a glance, and we win this lawsuit. If this instrument is not a *nudum pactum*, no argument of mine could change it, and we are tempted to end the case here. But to our way of thinking there is another view of this case which demonstrates its invalidity as a contract, and that is its lack of mutuality of remedy in case either party refused to carry out his supposed part as provided in the contract. Passing by the remedy of second party in case of breach by first party, what remedy would McIntyre have against Berryman if Berryman refused to do anything at all after the signing of this contract? He could not be sued for his failure to buy the timber, for he never agreed to buy any timber. If it be replied to this, that Berryman agreed to buy the timber, by necessary implication we answer that, even if this be true, Berryman never agreed to pay for any timber unless he cut it, and he has not cut any. If there be any answer to this proposition, it would have to be that Berryman, by implication, agreed to cut the timber. If he should be sued for his failure to begin cutting the timber, he could answer that he never agreed, except by implication, to begin cutting any timber; for he agreed to begin operations only when he had cut out another location, and he never agreed that he would ever cut out such location, unless it be by implication. The plain and unvarnished fact is, if this

instrument be construed as a contract, one whole side of it would have to be made entirely out of implications, for as it is written, it is totally one-sided, with absolutely nothing required of second party which he is bound to do.

But, before leaving this part of the argument, we wish to observe that, in our judgment, this instrument is a mere license to Berryman to cut timber on these lands, revocable at the pleasure of McIntyre. Under the terms of this instrument, Berryman had the right to go upon these lands and cut timber, and had he chosen to do so, he would not have been in any sense a trespasser. If he did cut timber, he was under legal obligation to keep a correct account of all timber cut during the month and at the end of the month pay McIntyre for it at the rate of one dollar per thousand feet. If he failed so to do, McIntyre could have sued him for such failure, but this is exactly what would happen if this instrument be construed as a license. In fact, if the party who drew this "timber contract" had called it a license instead of a contract, and had then proceeded to draw up a license, he would not have made it essentially different in form from what he did construct; for otherwise it would not have been a license.

But, if this instrument should be held to be a valid contract, is it such a contract as can be assigned? Counsel for appellee attempt to avoid this question in their pleading by alleging facts intended to work an estoppel. To our mind this is rather unique—make a contract out of implications and then seek to enforce it by invoking the doctrine of estoppel. But we do not think counsel go deep enough to get at the real issue. Even if this instrument was a valid contract originally as between McIntyre and Berryman, we contend, for reasons perfectly patent and obvious, that it is not a contract as between McIntyre and Adams. There is no mutuality of obligation as between them, nd Adams

does not show or pretend to show, that he is bound by this alleged contract. McIntyre may be estopped to deny, or to object to, the assignment, but the burden is on Adams, the appellee, to show that as between himself and McIntyre this instrument is a contract. He has not done this and he cannot do it. He has not pledged himself in any way whatever to McIntyre. He has promised nothing. He has not so much as signed his name to this agreement. He has never intimated, so far as this instrument shows, that he agreed to take the place of Berryman in this contract and perform his obligations under it to McIntyre. If this contract is a contract·for anything, it is a contract for the sale of land, and the agreement must be in writing. Appellee has written nothing, not even his name, neither has he promised anything. He has not so much as signed obligation, either legal, or moral, or contractual, after this assignment to him, to do anything whatever. Of this proposition there can be no doubt. As between appellee, Adams and McIntyre, this agreement is wholly lacking in both mutuality of obligation and mutuality of remedy. Do not suppose that counsel for appellee, even in dire extremity, would attempt to maintain that McIntyre could have recovered from appellee, had appellee failed to cut this timber. But this is what they must establish before they have any right to maintain the present action.

*J. W. Boone,* for appellee.

This contract is on all fours with the one in the case of *Coat Lumber Company.* v. *Pope,* 43 So. 434. In this Pope case the lumber company had a contract to cut all the timber on certain lands at one dollar per thousand feet. They failed to cut all the timber as provided in the contract and the seller, Pope, sued him for the value of the timber left uncut, and the court held·

that the defendant was liable for all the timber on the land at the rate of one dollar per thousand to be credited with the amount actually paid by the purchaser. We contend this same principle applies in this case.

The contract in *McVeay* v. *Rich,* 59 So. 842, is exactly similar to contract in this case and the court held it good against a demurrer. The case of *Davis* v. *Bellas,* 56 So. 174, is also a case in so far as the points involved in the case at bar is concerned, directly similar. The purchaser in that case agrees to buy certain timber at the rate of one dollar and twenty-five cents per thousand at periodical payments to be made similar to the contract in the case at bar. This contract was held valid by this court. Appellant relies upon the case of *Campbell* v. *Lambert Company,* 51 A. R. L.

This is a Louisiana case and is not applicable to the case at bar as the subject-matter therein is different from the case at bar. Louisiana court sustains these timber contracts when practically in the same form as the contract in the case at bar, as shown by the case of *Kent* v. *Davis Bros. Lumber Co.,* 48 So. 451, where the whole doctrine involved in the case at bar is discussed. The contract in this Kent case is similar to the case at bar and held valid by the court.

Appellant in the third paragraph of his brief says: "Berryman never agreed to pay for any timber unless he cut it and has not cut any." By reading the bill it will be seen that the facts are, as alleged in the bill, that Berryman, after they cut out the then location as provided in the contract, proceeded to move the mill upon the lands of said McIntyre and proceeded to cut and did cut a part of the timber located thereon. This allegation must be accepted as true on the hearing of the demurrer and shows that the Berrymans were acting in good faith in carrying out their part of the contract.

Second. Was this contract assignable? There can be but one answer, yes. There is nothing about the con-

tract that makes it non-assignable. Berrymans owned
a valuable, right to cut the timber and secure what
profit there would be to them and could sell and assign
all of their rights under the contract, and Adams step-
ped into the shoes of the Berrymans, thereby becoming
subject to all of its conditions and terms, and Adams
accepting the same necessarily assumed all the responsi-
bilities thereunder to McIntyre and became responsible
to McIntyre for the fulfillment of the contract. It is
alleged in the bill that McIntyre was fully aware of
the negotiations going on between Berryman and
Adams, the appellee, and was aware that Adams, ap-
pellee, was assuming all the obligations of the said
Berryman under the contract. The bill further alleges
as a fact that McIntyre entered into the negotiations
wholly acquiesced therein, and approved and assented
thereto in all respects. The bill further alleges that
soon after this transfer to Adams, appellee, that he
began preparations to cut said lumber and to carry out
the contract with said McIntyre and that McIntyre noti-
fied Adams' agent who was on the ground preparing to
cut the timber, not to cut the same as he had disposed of
it to other parties. If all this be true, we can see no
way for Adams to escape liability under the contract
to McIntyre if he should make default.

It amounts to both parties to the contract accepting
Adams as a second party thereto, with the view of carry-
ing out the contract as the bill alleged. Adams bought
the sawmill belonging to Berrymans which was situated
on the land and incurred this expense with the view of
carrying out the contract and, inasmuch as McIntyre
knew all this and acquiesced in the same, he had no
right to sell and conferred no title upon those to whom
he did sell in disregard of his contract.

It was not necessary for Adams to sign the assign-
ment. It was only necessary for him to accept it and
this could be by act or word without a written accept-

ance. The bill clearly shows an acceptance on Adams' part by his buying a sawmill and proceeding to prepare to cut the timber.

The filing of this bill by Adams seeking the enforcement, was only necessary for him to accept it and this could be by act or word without a written acceptance. The bill clearly shows an acceptance on Adams' part by his buying a sawmill and proceeding to prepare to cut the timber.

The filing of this bill by Adams seeking the enforcement of the contract is sufficient proof of acceptance, on the same principle that the statute of frauds is met by the filing of a bill to enforce a contract otherwise void under the statute of frauds. *Peevey* v. *Haughton,* 72 Miss. 918; *Washington* v. *Soria,* 72 Miss. 665. These last two cases meet completely the argument of the appellant's brief that this contract for the sale of land must be in writing and that appellee has written nothing. The transfer to Adams and his acceptance of the same shows by the allegations of the bill and the filing of the bill in this case makes it absolutely sure that M'cIntyre not only has Adams bound to the mutual undertaking between McIntyre and Berryman, but has him also fully subjected to suit by McIntyre for a breach of the contract and there is therefore both a mutuality of obligation and a mutuality of remedy.

We submit that the case ought to be affirmed.

SYKES, J., delivered the opinion of the court.

This suit was instituted in the chancery court by the appellee, W. T. Adams, as complainant. The bill in short alleges that one of the defendants (appellants), John W. McIntyre, was the owner of a certain tract of timbered lands in Alcorn and Tippah counties, and on the 27th of March, 1917, entered into a contract with J. B. and J. R. Berryman, under the terms of which contract the timber on these lands was sold by McIntyre

to the Berrymans. A copy of this contract is attached to the bill and hereafter will be set out in full. The terms of the contract are briefly stated in the bill.

The bill further alleges that, after the Berrymans had finished cutting out their then location, they moved their mill upon the lands of McIntyre and proceeded to comply with this contract, and did cut a part of the timber on the lands; that on July 17th, thereafter, the Berrymans entered into negotiations with the complainant, Adams, looking towards a purchase by Adams of the Berrymans' mill and having Adams take up and carry out their contract with McIntyre; that the Berrymans and Adams entered into an agreement by which they sold this mill and transferred to Adams all of their rights under this contract; that under the terms of this sale Adams assumed all of the rights and obligations of the Berrymans under the contract, and was to carry it out according to its terms, and in the place and stead of the said Berrymans; that McIntyre was fully aware of the fact that these negotiations were going on, viz., that the Berrymans were selling and transferring to Adams their rights under the contract, and that Adams was assuming all of the obligations of the Berrymans in accordance with the contract. The bill alleges that McIntyre entered into the negotiations, fully acquiesced therein and approved and assented thereto in all respects, and that the trade made between the Berrymans and Adams was made with a full and complete understanding that same was acquiesced in and in all respects approved by McIntyre; that soon after this thansfer was made Adams began preparation to cut the timber and carry out the contract with McIntyre according to its terms; that McIntyre then notified Adams, through his agent, who was on the ground and preparing to cut the said timber, that they must not cut it, and that he had disposed of the timber to other parties.

The bill then alleges, upon information and belief, that McIntyre sold the timber to the defendants (ap-

pellants) Young and Henry; that these defendants were fully aware of the terms and conditions of the Berry-mans' contract and of the assignment of the same to Adams with the knowledge and consent of McIntyre, and that they purchased the same with the knowledge of complainant's contract. It is alleged that McIntyre, by his acquiescence, knowledge, consent, and approval of the assignment of the contract by the Berrymans to Adams, is estopped to deny that complainant's contract is valid and binding. It is alleged that the claim of Young and Henry to the timber constitues a cloud upon complainant's title. The prayer of the bill, among other things, asks that all of the defendants be perpetually- enjoined from cutting and removing the timber from the lands, and from in any manner interfering with the complainant in carrying out this contract, and that the claim of Young and Henry to the timber be removed as a cloud upon the title of complainant. Other relief is asked for not necessary to be stated.

The contract was assigned in writing by the Berry-mans to Adams, as is shown and appears on the contract, which reads as follows:

"Timber Contract.

" "This agreement, made and entered into this the 27th day of March, 1917, by and between John W. McIntyre, hereinafter called first party and J. B. and J. R. Berryman, hereinafter called second party witnesseth;

"That the first party agrees to sell to the second party all pine timber suitable to be sawed into lumber on the following described land, to wit: [Here follows description of land.]

"Said above described timber is sold on the following conditions and terms: For all said timber cut by the second party, they are to pay first party therefor at the rate of one dollar per thousand feet, lumber measure. The second party is to keep an accurate account of all of said timber cut by them. On the 1st day of each month

after they begin to cut said timber, second party is to report to first party the number of feet of said timber that they have cut and sawed during the preceding month, and on said date is to pay the first party for all said timber so cut and sawed during said preceding month at the rate above specified. If at any time it becomes impossible for second party to cut said timber from any cause, then said first party shall have the right to take said timber and make such disposals as he thinks best, and second party shall not have the right to object in any way. The second party is to commence to cut said timber as soon as they cut out their present location.

"[Signed]           JOHN W. McINTYRE,
                "Party of the First Part.
                  "J. B. BERRYMAN,
                  "J. R. BERRYMAN,
             "Party of the Second Part.

"For value received, I hereby transfer the within contract to W. T. Adams, this the 17th day of July, 1919. J. B. Berryman and J. R. Berryman, by J. B. Berryman."

A general demurrer was filed to this bill, containing one ground, viz.:

"The said original bill does not state a cause of action against defendants, or any or either of them."

This demurrer was heard and overruled by the chancellor, and an appeal granted to this court to settle the principles of law of the case. The contentions of the appellants are thus well summarized in the brief of their counsel as follows:

"For this suit to be maintainable, this instrument must, in the first place, be a contract; in the second place, it must be an assignable contract; and in the third place, when assigned, if assignable, its terms must be mutually binding on McIntyre, one of the original par-

ties, and on Adams, the assignee of the other of the original parties.''

It is contended by counsel for appellant that the alleged timber contract is not a contract, but a *nudum pactum,* by which the Berrymans were in no wise bound to do anything. Under this contract McIntyre agreed to sell to the Berrymans certain pine timber. The Berrymans agreed to pay McIntyre for this timber at the rate of one dollar per thousand feet. The Berrymans are required to keep an account of all of the timber cut by them, and on the 1st day of each month after they began cutting the timber to account for the same and settle for the timber cut the preceding month. The contract further provides that the Berrymans were to begin cutting this timber under this contract as soon as they had cut out their then location. It is presumed that McIntyre knew where they were cutting at the time this contract was made, and the amount of timber which remained to be cut before they could begin work on the timber purchased from him. It was the duty of the Berrymans to complete the cutting of the contract upon which they were then at work within a reasonable time by the use of skill, care, and diligence, after which time they were to begin operations on the timber sold to them by McIntyre. They were then bound to begin operations within a reasonable time, and to comply with this contract by using proper skill and diligence. The contract was not a *nudum pactum,* but was a mutual contract, binding alike upon both parties thereto. By its terms the timber was duly sold to the Berrymans, who were to pay for the same as cut in the manner provided for in the contract.

In its material aspects this contract is similar to the one quoted in the case of *McVeay* v. *Rich,* 102 Miss. 552, 59 So. 842. In that case McVeay sued Rich for damages for breach of contract. A demurrer was by the lower

court sustained to the declaration, but on appeal to this court it was held that the declaration stated a good cause of action. In that case Rich was the owner of the land and the seller of the timber, occupying a position similar to that occupied by McIntyre in this case. The demurrer challenged the validity of the contract in that case, as it does in this. The material terms of that contract are similar to the ones in this contract. The decision in that case is therefore controlling in this. Other decisions in point are *Davis* v. *Bellows,* 99 Miss. 838, 56 So. 174; *Coat Lumber Co.* v. *Pope,* 43 So. 434.

The bill alleges that after the Berrymans had moved the mill upon the lands of McIntyre, and had begun to cut the timber and comply with this contract, with the full knowledge, acquiescence, and consent of McIntyre, they sold the mill to complainant, Adams, and assigned to him their rights and liabilities under this contract, to all of which McIntyre agreed. By consenting and agreeing to this, McIntyre is now estopped to claim that the contract was not assignable. It is therefore unnecessary for us to decide whether or not ordinarily the contract could be assigned, and the relative rights and liabilities of the parties under the assigned contract.

By the filing of the bill in this case, the complainant, Adams, offers to perform the contract of the Berrymans assigned to him. The filing of the bill is a compliance with the statute of frauds. *Peevey* v. *Haughton,* 72 Miss. 918, 17 So. 378, 18 So. 357, 48 Am. St. Rep. 592.

Affirmed and remanded, leave being given the defendants in the lower court to answer the bill within ninety days after the mandate of this court is filed in the chancery court.

*Affirmed and remanded.*