· ADAMS *v.* YOUNG *et al.*

[88 South. 324, No. 21805.]

LOGS AND LOGGING. *Timber held to revert to vendors upon impossibility of performance of contract.*

In a timber contract providing that, if at any time it becomes impossible for vendees to cut the timber, it would revert to vendor, the contract becomes invalid, and the reversion arises when it appears that it was impossible for vendees' assignee to cut the timber within a reasonable time, in the manner stipulated.

APPEAL from chancery court of Alcorn county.

HON. A. J. MCINTYRE, Chancellor.

Suit by W. T. Adams against Hubert F. Young and others. Decree for defendants, and plaintiff appeals. Affirmed.

*Boone & Worsham* and *C. W. Sweat,* for appellant.

The chancellor in his opinion, in discussing the right of the termination of this contract, said: "The contract says upon a failure, or if it was impossible for them to operate the mill and keep this contract, then Dr. McIntyre should have the right to take charge of it and declare it void, and Berryman had nothing to say about it whatever." The above is not a literal quotation from the contract, for the reason that the contract does not provide for the termination thereof by a failure on Berryman's part to cut the timber, but the exact language of the contract, is, "if at any time it becomes impossible for second party to cut said timber from any cause, etc." In other words, nothing would justify the cancellation of the contract except an impossibility on Berryman's part to carry it out; and inasmuch as Adams succeeded to all the rights of Berryman, nothing would justify the cancellation of the contract as to Adams except an impossibility on Adams' part to cut said timber from any cause.

We contend that there is nothing in the evidence to justify the court in finding, nor did the court in its opinion attempt to find that it was impossible for Adams to perform this contract, and that Adams had a right to proceed under this contract early or late, unless, and until the contract was cancelled by proper legal proceedings. It will be observed that the contract does not provide that when Dr. McIntyre shall consider or determine on his own part and for himself that it was impossible for Berryman to cut the timber from any cause, but the fact as to whether or not it was impossible for the Berrymans, and likewise impossible for Adams to cut the timber is a question of fact to be determined by the courts. Dr. McIntyre had no right upon his own *ipse dixit* to determine that the facts necessary to create an impossibility on Berryman's part to cut this timber existed.

Berryman, and likewise Adams, had a right to rely upon the law of the land, and in making their arrangements in determining when they should finish cutting said timber, had a right to rely upon the law touching that question. At the time of the making of these contracts, we find the law of Mississippi to be set forth in the case of *Hines* v. *The Imperial Naval Stores Co.,* 101 Miss. 807, 58 So. 650, in which case this court had under consideration a lease for boxing timber in which the time within which the boxing must be begun was not specified in the lease and that the boxing did not begin until after the expiration of seven years from the date of the lease; and it was contended by appellant that the boxing must begin within a reasonable time and that seven years is an unreasonable time in which to begin. Judge SMITH, in delivering the opinion, said: "On this point I am directed by my Brethren to say that: The question of the reasonableness of this contract cannot be drawn in question in this proceeding. When a valid contract is once made for, the sale of timber or timber rights which specified no time for the completion of the contract, the court will construe the contract so as to force the completion within a reasonable

time, determinable from all the facts and circumstances surrounding each particular case; but the court will not declare any such contract unreasonable so as to avoid the consequences except on a direct proceeding to cancel." In the above principle of law, however, Judge SMITH did not concur.

We contend that in the light of all the facts and circumstances surrounding this case that Dr. McIntyre could not terminate this contract without resorting to direct proceedings so to do.

W. D. *Conn,* for appellee.

Counsel say, "We contend that there is nothing in the evidence to justify the court in finding, nor did the court in its opinion find that it was impossible for Adams to perform this contract." With this statement we take issue and it is on this proposition we fall back on in case all other contentions fail us. The contract provides as follws: "If at any time it becomes impossible for second party to cut said timber from any cause, then said first party shall have the right to take said timber and make such disposal as he thinks best, and second party shall not have the right to object in any way." On page 21 of the record it is shown that appellant testified as follows: "I tried to get some one to run the mill and cut the timber for me and talked with different people about operating the mill and cutting and hauling the logs to the mill; in fact, we went so far once as to have a deal on for a man to work it and couldn't get a man to saw it. I sent Mr. Savage with a man by the name of Colrey from Rienzi, to make a deal with him to saw this timber for me and I afterwards undertook to make a deal with one of the Colemans to take the mill and saw the timber at a fixed price delivered to the railroad." Appellant further testified, that: "After failing, as above recited, I tried to sell the mill and contract to people who would operate it." Appellant makes the following statement: "Well, it does not make any

difference one way or the other.  I bought the mill to
operate and cut the timber and when I could not, I de-
cided if somebody would come and cut the timber and pay
this price, I would let them have it." Still further on he
stated that he proposed to sell out and let the purchaser
take over the contract, after he had gotten through his
efforts to manufacture.

We confidently ask what more is necessary to establish
the proposition that it was impossible for second party to
cut the timber within the meaning of the contract.  He
admits that he never intended to go about the proposition
himself.  He says he tried to get some one to cut it for
him and failed.  Then, on cross-examination, he states
that he bought the mill to operate and cut the timber and
that he couldn't.  He did not intend to cut, and began try-
ing to sell out.  He had failed; he couldn't and he quit
trying; and we submit that if anything on earth is human-
ly impossible it is for a man to do a thing after he has
failed, admitted to himself that he cannot do it, and then
quits trying.  The very contingency provided for in the
contract had happened.  Of course, when Dr. McIntyre
took the matter in his hands and sold the timber he neces-
sarily assumed the risk of establishing this proposition.
But when the other party admits the impossibility over
and over again, it seems to us that he occupies an im-
pregnable position.  If it is for the courts to determine
this question of impossibility, and not for Dr. McIntyre,
by his *ipse dixit,* to do it, here is the testimony plain,
pointed and uncontradicted, and out of the mouth of the
party himself, which ought to make it comparatively easy
for the court to decide this question of fact.

It is contended for by counsel for appellant that Dr.
McIntyre could not terminate this contract except by re-
sorting to a direct proceeding in court for this purpose.
In reply to this contention, we ask what, then, was the
purpose of putting into the contract the condition we have
just been discussing.  Dr. McIntyre had reserved in the
contract the right to terminate the contract, under cer-

tain conditions, and also forbade the other party even the right of complaining thereat. Certainly counsel are not serious in this contention. This stipulation evidently was put in the contract expressly for the purpose of avoiding the necessity of resorting to the court to terminate it.

HOLDEN, J., delivered the opinion of the court.

This is a bill in chancery to cancel a claim as a cloud upon the title of complainant to certain timber, and for a perpetual injunction against interference with complainant by appellees in his rights with reference to cutting and removing said timber. The case is here for the second time. Upon the former appeal, styled *Young et al.* v. *Adams,* 122 Miss. 1, 84 So. 1, this court held that the bill stated a good cause and remanded the case for furthr answer and proceedings in the lower court.

Upon the second trial of the cause testimony was heard by the chancellor on the question of whether the appellant, Adams, assignee of the Berrymans, had diligently complied with the terms of the timber contract, and whether it had become impossible for him to do so, and thus forfeited his rights to McIntyre, the original vendor in the timber contract between McIntyre and the Berrymans. The bill and contract are set out in full in the former decision, to which we refer as the law of the case.

We have carefully reviewed and considered the testimony introduced before the chancellor by both sides, and deem it sufficient to say, without setting out the evidence in detail, the proof was ample to warrant the chancellor in finding as a fact that the appellant, Adams, by his delay and failure to proceed to cut the timber under the contract, and by his own testimony that he was unable to operate the mill, and consequently it became impossible to cut the timber as provided by the contract, had thereby forfeited all of his rights thereunder. Therefore we think the decree of the chancellor is correct.

The contract, reasonably construed, means that, if the appellant, Adams, who was the assignee from the Berrymans and stands in their shoes, found it impossible to carry out the contract by cutting and removing the timber within a reasonable time according to its terms, then the contract was to become invalid and the timber and all of the rights going with it should revert to the appellee grantor. The contract uses the language:

"If at any time it becomes impossible for second party to cut said timber from any cause, then said first party shall have the right to take said timber and make such disposals as he thinks best, and second party shall not have the right to object in any way."

The evidence shows that this impossibility arose; consequently the right to retake arose.

The word "impossible" was intended to be used in a limited sense and has reference to the time and manner in which the cutting is to be done. However, the testimony in this record is such as to justify the chancellor in deciding as a matter of fact that the appellant had found it impossible to carry out the contract, and had, furthermore, abandoned the purpose of carrying it out and was endeavoring to sell the timber to other persons for several months before the sale to appellees by McIntyre.

The case before us is different from the *Hines Case*, 101 Miss. 802, 58 So. 650, in that no time was specified for beginning or completing the contract in the Hines Case, nor was there a provision for retaking the timber upon failure of vendee, but here the contract is obviously different in its terms.

The decree is affirmed.

*Affirmed.*